# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 12, 2010

Charles R. Fulbruge III
Clerk

No. 08-30960
Summary Calendar

———

JOHN W. WINDHAUSER,

Plaintiff-Appellant,

v.

BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY & AGRICULTURAL AND MECHANICAL COLLEGE,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN WINDHAUSER,

Plaintiff-Appellant,

v.

RONALD R. ANDERSON; JACK A. ANDONIE; BERNARD E. BOUDREAUX, JR; MARTY CHABERT; CHARLES V. CUSIMANO; FRANCIS M. GOWEN, JR; WILLIAM JENKINS; LOUIS LAMBERT; LAURA A. LEACH; SEAN O'KEEFE; DOROTHY REESE; JAMES P. ROY; JERRY E. SHEA, JR; C. STEWART SLACK; LACEY D. SPENDER; CHARLES S. WEEMS, III and ROD WEST,

Defendants-Appellees.

———

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:02-CV-01022

———

No. 08-30960

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment to all defendants on Plaintiff-Appellant John W. Windhauser's claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Louisiana Employment Discrimination Act, La. Rev. Stat. 23:301. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Louisiana State University hired Windhauser as an associate professor in the School of Journalism in 1982. LSU granted Windhauser tenure in 1984. In 1994, the School of Journalism was elevated to an independent college-level unit and renamed the Manship School of Mass Communication. Beginning in 1994, Windhauser began receiving poor annual reviews from John Hamilton, the Dean of the Manship School. In 1998, LSU placed Windhauser on leave without pay on account of his chronic back pain. In March of 1999, Windhauser filed his first lawsuit against LSU, asserting that it had unlawfully placed him on leave without pay. Throughout this period, Windhauser continued to receive below-average employment reviews from Hamilton. In 2002, Hamilton informed Windhauser that he would initiate a formal faculty review of Windhauser's job performance pursuant to Permanent Memorandum 35 (PM-35), a policy governing the review of LSU's faculty ranks. On March 12, 2002, the panel conducting the review concluded that Windhauser's performance was unsatisfactory and warranted formal remediation efforts.

In April of 2002, Vice-Chancellor Daniel Fogel initiated formal remediation efforts by convening a committee to address Windhauser's performance issues.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 08-30960

Windhauser submitted a document outlining a plan for improvement, but the committee determined that this plan did not outline any specific steps he would take to address his job performance issues. In August of 2002, the committee again requested a plan of improvement, but Windhauser failed to submit any documents. In October of 2002, Windhauser amended his lawsuit to include claims under the ADA for discrimination and failure to accommodated his disability and a claim under Title VII for unlawful retaliation. The defendants removed the litigation to the United States District Court for the Middle District of Louisiana. In January of 2003, Chancellor Mark Emmert requested that Windhauser submit an updated plan to the remediation committee; Windhauser did not submit the required plan.

In May of 2003, Hamilton notified Windhauser that he was recommending that proceedings be initiated to terminate Windhauser's employment for cause due to Windhauser's failure to cooperate with the remediation committee. A faculty panel conducted a hearing and recommended that Windhauser be terminated. After review by Chancellor O'Keefe, President Jenkins, and the Board of Supervisors, Windhauser's employment with LSU was terminated effective July 8, 2005.

In August of 2005, Windhauser filed a new complaint in the district court alleging that he was denied due process rights during his termination hearing and that he had been terminated in breach of his tenure rights and in violation of the Contracts Clause. Windhauser named LSU President William Jenkins; Chancellor Sean O'Keefe and the individual members of the Board of Supervisors as defendants in this lawsuit and sought relief under 42 U.S.C. § 1983. The district court consolidated the new complaint with Windhauser's previous lawsuit. Defendants filed a motion for summary judgment on all claims except Windhauser's claims arising from his placement on leave without pay.

3

No. 08-30960

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same legal standards as the district court. *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). In reviewing a grant of summary judgment, we we view the evidence and inferences from the summary judgment record in the light most favorable to the nonmoving party. *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir. 2005). "Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. § 1983 Claims

The district court held that the individual defendants were entitled to qualified immunity on all of Windhauser's § 1983 claims. Windhauser did not address this issue in his initial brief to the court; he raised it in his reply brief only after the appellees argued that he had waived the issue on appeal. An appellant's failure to raise an issue in its initial brief constitutes abandonment of that issue. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *United Paperworkers Int'l Union v. Champion In't Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990).

### B. ADA and LEDA Claims

Windhauser next argues that the district court erred in granting summary judgment on his claims under the ADA and the Louisiana Employment Discrimination Act. As a preliminary matter, we observe that Windhauser provides no supporting argument regarding his claims under the LEDA[1] and has

---

[1] A footnote in Windhauser's initial brief states that "Louisiana courts frequently find federal jurisprudence in interpreting the state counterpart provision to the ADA to be

4

No. 08-30960

thus failed to properly brief the issue. An appellant who fails to properly brief an issue before this court waives it. *U.S. v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000).

Windhauser claims that the district court erred by treating his claims as disparate-treatment claims under the ADA, when in fact they were failure-to-accommodate claims. A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment. 42 U.S.C. §§ 12112(a), (b)(5)(A). A review of Windhauser's complaint, however, indicates the majority of his claims were in fact disparate-treatment claims.[2] Furthermore, the record does not indicate that the district court erroneously treated Windhauser's failure-to-accommodate claims as disparate-treatment claims when it granted summary judgment to the defendants.

Windhauser also argues that the defendants failed to reasonably accommodate his requests regarding the location of his faculty offices, the locations of his classrooms and the length of faculty meetings.[3] We first address Windhauser's claims regarding his assignment of office space. The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a "deferral state." *See* La. Rev. Stat. Ann.

---

persuasive." This statement may be accurate, but it does not constitute a properly-briefed argument. Windhauser makes no other reference to his LEDA claim in his initial brief or his reply brief.

[2] In his complaint, Windhauser asserted that he was denied a cost of living raise that all other faculty received; that non-disabled faculty were assigned more-accessible classroom space; that non-disabled faculty were allowed to teach graduate school classes while he was denied the same opportunity; that non-disabled faculty were allowed to teach summer courses while he was not; and that non-disabled faculty were granted course reductions to allow for academic research while he was not. These claims rest on a theory of disparate treatment, rather than a failure to accommodate.

[3] Windhauser has not briefed any of his disparate-treatment claims or his claim of unlawful retaliation and has thus abandoned them. *Banks v. Thaler*, 583 F.3d 295, 329 (5th Cir. 2009).

5

No. 08-30960

§ 51:2231, et seq.  Because Louisiana is a deferral state, Windhauser had three hundred days from an alleged act of discrimination to file a charge with the Equal Employment Opportunity Commission (EEOC). *See Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (noting that Texas's status as a deferral state granted plaintiff three hundred days to file suit).  Windhauser filed a charge of discrimination on January 8, 2002.[4]  Accordingly any acts of discrimination which occurred prior to March 14, 2001 are time-barred.[5]

Windhauser's first claim arises from a letter written by his physician, Dr. Kramm, requesting that Windhauser be assigned first-floor office space with an appropriate chair and desk on March 23, 1999.  The alleged denial of this request would have occurred before the cut-off date, rendering this claim time-barred.  Windhauser also claims that he made two separate requests to be assigned closer office space and was denied on both occasions.  The first request was made after Dr. Whitney Mundt passed away in 1996 and his offices became available; this incident is time-barred.  The second request was made in the summer of 2002 during the renovation of the Journalism Building.  This claim was not included in Windhauser's January 8 EEOC complaint and we therefore

---

[4] Before the district court, the parties also referenced an earlier EEOC charge filed sometime in August of 2001.  The record on appeal does not contain a copy of this charge and so we will not consider it.  We note, however, that our analysis would yield the same conclusion even if we were to consider the earlier charge and assume that it was dated August 1, 2001.

[5] Windhauser attempts to circumvent the limitations period by arguing that the defendants' actions fall under the "continuing violation theory" and that the 300-day exhaustion requirement should be relaxed.  "The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997).  However, the relevant discriminatory actions alleged in the complaint "[are] the sort[s] of discrete and salient event[s] that should put an employee on notice that a cause of action has accrued." *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1999); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  We therefore find the continuing violation doctrine inapplicable to the time-barred claims.

will not consider it. *Nat'l Ass'n of Gov't Employees v. City Pub. Ser. Bd. of San Antonio, Tex.* 40 F.3d 698, 711 (5th Cir. 1994) (holding that courts have no jurisdiction to consider Title VII claims as to which a plaintiff has failed to exhaust administrative remedies).

Windhauser next argues that the district court erred in granting summary judgment on his claims regarding his request for first-floor classroom space and his request that his classrooms be located near his office. The record is somewhat unclear as to whether Windhauser ever made a request for first-floor classroom space. Assuming that such request was implied in Dr. Kramm's March 1999 letter, it is time-barred. Windhauser's request for closer classroom space refers to the relocation of classrooms for six faculty to the Middleton Library during the spring of 2001. This claim was not styled as a failure-to-accommodate claim in the complaint. Rather, it alleged that Windhauser was purposefully assigned classroom space that made it more difficult on him as a result of his disability while non-disabled faculty were assigned more accessible space. Windhauser cannot recharacterize this claim as one for a failure to accommodate on appeal.[6]

Finally, Windhauser argues that the district court erroneously granted summary judgment on his claims that the defendants failed to accommodate his requests to limit all faculty meetings in which he was involved to twenty-minutes. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise

---

[6] Summary judgment would be appropriate even if we were to treat the claim on appeal one for disparate treatment. Windhauser has failed to establish a *prima facie* case of discrimination with respect to the reassignment as the other faculty members who had their classrooms reassigned were not disabled.

qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A). The plaintiff bears the initial burden of proof on the issue of reasonableness, but need only show that the proposed accommodation is reasonable "in the run of cases." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

We find that the district court properly granted summary judgment to the defendants on this claim. Windhauser presented no evidence at summary judgment that his proposed accommodations were reasonable. On appeal, he reasserts that his requests were reasonable without citing any evidence presented to the district court. Such unsupported assertions are insufficient to defeat a motion summary judgment. *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.